*1055 Appeal from a judgment of Supreme Court, Onondaga County (Centra, J.), entered October 4, 2002, awarding plaintiff judgment against defendants 81 & 3 of Watertown, Inc., Pasquale D. Cipolla, Mary Ripper, Bella Vista Group, Inc. and Innovative Realty, Inc. for a total of $1,149,644.97, including interest and costs.
It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by reversing that part against defendant Innovative Realty, Inc. and dismissing the complaint against it and by vacating the award of damages against defendants Mary Ripper and Bella Vista Group, Inc. and as modified the judgment is affirmed without costs, and the matter is remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the following memorandum: 81 & 3 of Watertown, Inc. (81 & 3), Pasquale D. Cipolla, Mary Ripper, Bella Vista Group, Inc. (Bella Vista) and Innovative Realty, Inc. (Innovative) (collectively, defendants) appeal from a judgment entered after a nonjury trial awarding plaintiff, Edgewater Construction Co., Inc. (Edgewater), $583,698.80 in damages for breach of contract and the wrongful diversion of funds held in trust under the Lien Law.
This action arises from the construction of a Sam’s Wholesale Club store in Watertown for Wal-Mart Stores, Inc. (Wal-Mart). With construction of the foundation wall approximately 75% completed, at a cost of over $300,000, it was discovered that a subcontractor had failed to install $619.20 worth of a horizontal wall reinforcement, known as “Dur-o-Wall,” during construction. The omission resulted from the subcontractor installing the Dur-o-Wall on every other course of below-grade masonry block, in accordance with the standard building practice in the area, rather than on every course of below-grade masonry block, as required by the contract specifications. There is no dispute that the lack of additional Dur-o-Wall did not diminish the structural integrity of the foundation. Nevertheless, 81 & 3, which was responsible for the construction of the store for WalMart, required Edgewater, the general contractor, to rebuild the foundation at a cost in excess of $500,000.
Edgewater thereafter commenced this action against defen *1056 dants seeking to recover its rebuilding costs. The first cause of action alleges that 81 & 3 breached its contract with Edgewater by wrongfully directing it to rebuild the foundation. The second cause of action generally alleges that funds held in trust under article 3-A of the Lien Law for payment of the project were wrongfully diverted by defendants.
After trial, Supreme Court found that the failure to install the Dur-o-Wall on every course of below-grade masonry block was unintentional and trivial and thus determined that 81 & 3 breached its contract with Edgewater by requiring the foundation to be rebuilt. The court also found that funds held in trust by 81 & 3 under article 3-A of the Lien Law had been wrongfully diverted, and it held each of the defendants responsible for that diversion, granting judgment against them jointly and severally for the entire amount of damages awarded to Edgewater.
With respect to the first cause of action, defendants contend that, notwithstanding the trivial nature of the error in construction, the error was intentional on the part of the subcontractor and deliberately overlooked by Edgewater and thus 81 & 3 properly required Edgewater to rectify it. We disagree. The record establishes that the failure to install the additional Dur-oWall “was the result of the oversight and inattention of [Edgewater’s] subcontractor” rather than any “fraudulent . . . or willful” conduct on the part of Edgewater or its subcontractor (Jacob & Youngs v Kent, 230 NY 239, 241 [1921], rearg denied 230 NY 656 [1921]). The contractual requirement that the Dur-o-Wall be installed on every course of below-grade masonry block did not accord with the standard building practice in the area, and the savings to the subcontractor resulting from its omission were minimal. Even the company hired by 81 & 3 to inspect the masonry work failed to notice the omission (see id.). Nor is there any evidence supporting defendants’ contention that Edgewater deliberately overlooked the contract specifications while observing the construction of the foundation. Edgewater’s inadvertent failure to notice the omission of the Dur-o-Wall may be traced to the unusual nature of the contract specification, which was meaningless in terms of the integrity of the foundation. Thus, we conclude that the court, after weighing “the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, [and] the cruelty of enforced adherence,” properly applied the doctrine of substantial performance to this case (id. at 243).
With respect to the second cause of action, defendants contend that the court erred in granting judgment against Innovative and Ripper in any amount and that it further erred in granting *1057 judgment against Bella Vista for the full amount of damages awarded to Edgewater. The store was constructed pursuant to a lease agreement between Bella Vista and Wal-Mart. Prior to the closing of the construction loan and mortgage, Bella Vista assigned its interest in the lease to 81 & 3, which was formed by Bella Vista for the sole purpose of constructing the store. 81 & 3 then contracted with Edgewater for the store’s construction. Innovative is a Bella Vista affiliate that brokers leases for tenants in Bella Vista’s shopping centers. Cipolla is the vice-president of 81 & 3, president of Bella Vista and an officer of Innovative. Ripper is the president of 81 & 3 and wife of Cipolla.
It was stipulated at trial that 81 & 3 received $739,152.34 subject to the trust under article 3-A of the Lien Law for the payment of the cost of the project. After trial, the court found that Ripper and Bella Vista “receivedt,] used, participated and consented to the use of construction funds . . . for purposes other than paying for the cost of the Project.” It also found that “Ripper diverted trust monies to herself and others.” The court made no findings with respect to Innovative and it did not otherwise quantify the amount of money wrongfully diverted and/or received by. Ripper and Bella Vista.
Generally, corporate officers may be personally liable for trust funds that they convert to their own use (see South Carolina Steel Corp. v Miller, 170 AD2d 592, 595 [1991]). Corporate officers also may be personally liable for trust funds otherwise wrongfully diverted by their corporation, provided that they knowingly participated in that diversion by the corporation (see Atlas Bldg. Sys. v Rende, 236 AD2d 494, 495 [1997]; South Carolina Steel Corp., 170 AD2d at 595; Fleck v Perla, 40 AD2d 1069, 1070 [1972]). A company that receives wrongfully diverted trust funds, “ ‘knowing [them] to be the subject of a trust, and to have been transferred in violation of the trustee’s duty or power, takes [the funds] subject to the right of the trustee, and also of the cestui que trust, to reclaim possession thereof, or to recover for [their] conversion’ ” (Fleck, 40 AD2d at 1070).
Notwithstanding those principles of law, however, the parties stipulated here in relevant part that defendants “may be liable . . . for the amount that the Court may find as due [Edgewater] in this action to the extent said Defendants or others received all or part of the said trust funds from 81 & 3 . . . and no testimony will be required of [Edgewater] or said Defendants concerning the second cause of action.” Thus, the parties stipulated out of the case any cause of action against a corporate officer, such as Ripper, based on that officer’s knowing participation in the wrongful diversion of trust funds by the corporation, *1058 and agreed that the liability of Ripper, Bella Vista and Innovative was limited to the amount of trust funds wrongfully received by them regardless whether they knew the money had been wrongfully diverted. “ ‘Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce’ ” (Joseph v New York State Teamsters Conference Pension & Retirement Fund, 71 AD2d 446, 450 [1979], quoting Pines v Beck, 300 NY 181, 187; Matter of New York, Lackawanna & W. R.R. Co., 98 NY 447, 453 [1885]).
The only relevant evidence presented at trial regarding the second cause of action was the checks and check registries that were stipulated into evidence. That evidence establishes that Ripper and Bella Vista received wrongfully diverted trust funds. However, the court never made any findings with respect to the exact amount of the trust funds those defendants wrongfully received. Thus, we modify the judgment by vacating the award of damages against Ripper and Bella Vista, and we remit the matter to Supreme Court, Onondaga County, for further findings with respect to the amount of trust funds those defendants wrongfully received and to grant judgment accordingly against them. With respect to Innovative, however, the evidence establishes that the only funds it received were in payment of brokerage fees owed to it on the project. We therefore further modify the judgment by reversing that part against Innovative and dismissing the complaint against it. Present — Pine, J.E, Wisner, Hurlbutt, Gorski and Lawton, JJ.