■ J. Petrocelli Construction, Inc., Respondent-Appellant, v Realm Electrical Contractors, Inc., Defendant and Third-Party Plaintiff-Appellant-Respondent, and Ralph Peluso et al., Appellants-Respondents. Fireman's Fund Insurance Company, Third-Party Defendant-Respondent. [790 NYS2d 197]—

In an action, inter alia, to recover damages for breach of contract and to enforce a trust pursuant to Lien Law article 3-A, the defendant third-party plaintiff Realm Electrical Contractors, Inc., also known as Realm Electrical Corp., also known as Realm Electric Corp., and the defendants Ralph Peluso and Ellen Peluso, appeal, as limited by their notice of appeal and brief, from so much of an order of the Supreme Court, Richmond County (Gigante, J.), dated November 22, 2002, as denied their motion for partial summary judgment on their counterclaim to recover damages for breach of contract and granted that branch of the plaintiff's cross motion which was to dismiss their first affirmative defense, and the plaintiff (1) cross-appeals from so much of the same order as denied that branch

of its motion which was to direct the defendants to post a bond in the sum of one million dollars, and (2) appeals, as limited by its notice of appeal and brief, from so much of an order of the same court dated October 24, 2003, as denied its motion for (a) summary judgment on its breach of contract and Lien Law trust diversion claims, and (b) leave to renew its prior motion to direct the defendants to post a bond.

Ordered that the order dated November 22, 2002, is affirmed insofar as appealed and cross-appealed from, without costs or disbursements; and it is further,

Ordered that the order dated October 24, 2003, is affirmed insofar as appealed from, without costs or disbursements.

On September 11, 1998, the plaintiff, as general contractor, entered into a contract (hereinafter the Contract) with the New York City School Construction Authority (hereinafter the SCA) for the construction of P.S. 6 on Staten Island. On October 6, 1998, the plaintiff entered into a subcontract (hereinafter the Subcontract) with the defendant third-party plaintiff, Realm Electrical Contractors, Inc., also known as Realm Electrical Corp., also known as Realm Electric Corp. (hereinafter Realm), for the performance of electrical work in connection with the project.

From approximately May 1999 until July 2000 the plaintiff repeatedly advised Realm to increase its on-site personnel in order to meet construction deadlines. Following the plaintiff's failure to achieve "substantial completion of the work" by June 28, 2000, as required under the terms of the Contract, SCA scheduled a termination-for-cause conference for July 10, 2000. SCA's reasons for calling the conference included, inter alia, the failure to "maintain and provide the necessary manpower to complete the electrical portion of the work to meet the substantial completion date." Immediately following the termination conference, the plaintiff, by letter dated July 10, 2000, terminated the Subcontract effective July 11, 2000.

Thereafter, the plaintiff commenced this action against the defendants to recover damages arising from Realm's alleged breach of the Subcontract, and the defendants counterclaimed and commenced a third-party action against Fireman's Fund Insurance Company, which had issued a bond guaranteeing payment for money due to the claimants for labor and material used in the project.

The defendants moved for partial summary judgment on their counterclaim to recover damages for breach of contract. They argued that the plaintiff breached section 7.2.1 of the Subcontract which required the plaintiff to provide Realm with seven

days written notice before terminating the Subcontract. In opposition, the plaintiff tendered, inter alia, an affidavit of the plaintiff's president, John J. Petrocelli. According to Petrocelli, the defendant Ralph Peluso, Realm's vice-president, was present at the termination conference and repudiated the Subcontract by stating that Realm could not get more personnel to work on the project and therefore had no way of addressing SCA's complaints. Peluso also purportedly "agreed to and/or requested an immediate termination" of the Subcontract. Peluso, in a reply affidavit, denied any agreement to terminate the Subcontract.

Generally, where parties agree on a termination procedure, the clause must be enforced as written (see A.S. Rampell, Inc. v Hyster Co., 3 NY2d 369, 382 [1957]; General Supply & Constr. Co. v Goelet, 241 NY 28 [1925]; Blumberg v Florence, 143 AD2d 380, 381 [1988]). Nevertheless, "[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent" (Allbrand Discount Liqs. v Times Sq. Stores Corp., 60 AD2d 568 [1977]; accord Oak Bee Corp. v Blankman & Co., 154 AD2d 3, 8 [1990]). Applying these principles, we agree with the Supreme Court's assessment that neither party in this case was entitled to judgment as a matter of law on their respective breach of contract claims. Whether the plaintiff is liable for its alleged failure to comply with the termination procedure set forth in section 7.2.1 of the Subcontract hinges on, inter alia, the resolution of factual issues centered around Realm's alleged prior repudiation of the Subcontract at the termination conference.

With respect to the plaintiff's claims pursuant to Lien Law article 3-A, the plaintiff alleges that it made progress payments to Realm totaling $3,372,946, which constituted trust funds under Lien Law § 70 to be used for the payment of claims specified under Lien Law § 71 (2). Following Realm's termination, the defendants allegedly refused to pay a number of their vendors and subcontractors who were beneficiaries of the trust, and the plaintiff was required to make payments totaling $687,066.81 to these vendors and subcontractors. The plaintiff, through the affirmation of its counsel which was "adopt[ed]" by Petrocelli, claimed that trust funds were illegally diverted by the defendants. Peluso, in two separate affidavits, denied any trust fund diversion and stated that "every dollar Realm received in connection with the Project was used to pay for project costs" and was "properly disbursed for valid trust fund expenditures."

The plaintiff is correct in asserting that, as subrogee, it may maintain an action under Lien Law article 3-A in its own name (*see* Lien Law § 77 [1]; *Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor,* 97 NY2d 256, 264-265 [2002]; *Caristo Constr. Corp. v Diners Fin. Corp.,* 21 NY2d 507, 515 [1968]). Therefore, the Supreme Court properly dismissed the defendants' first affirmative defense alleging that the plaintiff failed to state a cause of action for trust fund diversion under the Lien Law because it was not a beneficiary to the trust. Moreover, the Supreme Court properly denied the plaintiff's motion for summary judgment on its trust diversion claim, finding that there were issues of fact as to whether, and to what extent, if any, trust funds may have been diverted (*see Mandel v Neuman-Geller, Ltd.,* 202 AD2d 647 [1994]; *Ace Hardwood Flooring Co. v Glazer,* 74 AD2d 912 [1980]).

The parties' remaining contentions are without merit. Krausman, J.P., Mastro, Spolzino and Fisher, JJ., concur.